UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
FERNBACH, LLC,                                    :     08 Civ. 1265 (SHS)
                                                  :
                    Plaintiff,                    :     OPINION & ORDER
                                                  :
         -against-                                :
                                                  :
CAPITAL & GUARANTEE INC., PETER J.                :
MURPHY and PETER J. MURPHY d/b/a                  :
CAPITAL & GUARANTEE,                              :
                                                  :
                    Defendants.                   :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

Plaintiff Fernbach, LLC brought this action to recover $106,035.78 that it paid to defendant Capital & Guarantee Inc. in an attempt to expedite the issuance of a payment and performance bond to Fernbach's general contractor, Calleo Construction Corporation, as required by the terms of the loan that Fernbach obtained to finance construction on its property located at 26 East 81st Street in New York, NY. Defendants—Capital & Guarantee, Inc. ("C&G") and its principal, Peter J. Murphy—have moved to dismiss the amended complaint and Fernbach has cross-moved for summary judgment in its favor. On July 8, 2009, the Court issued an order notifying the parties that it was converting defendants' motion to dismiss the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(7) into one for summary judgment pursuant to Fed. R. Civ. P. 56 and affording all parties the opportunity to file supplemental briefing and evidence, which they did. Accordingly, the Court now addresses the parties' cross-motions for summary judgment.

**I.     BACKGROUND**

The following facts are either undisputed or the Court has drawn all factual inferences in the non-movant's favor.

In January 2007, Fernbach hired Calleo Construction Corporation ("Calleo") to serve as the general contractor for the improvement of a building owned by Fernbach.  (Pl.'s Local Civil Rule 56.1 Statement of Undisputed Facts[1] ("Pl.'s 56.1") ¶¶ 1, 3; Defs.' Local Civil Rule 56.1 Statement of Undisputed Facts ("Defs.' 56.1") ¶¶ 1, 3.)  The loan that Fernbach obtained to finance its improvements required that the general contractor for the project obtain a payment and performance bond before Fernbach could close on the loan.  Accordingly, Fernbach's contract with Calleo required that Calleo obtain such a bond for the full $4.2 million value of the underlying construction contract.  (Pl.'s 56.1 ¶¶ 2-3, 7; Defs.' 56.1 ¶¶ 2-3, 7.)

To this end, Calleo entered into a contract with C&G pursuant to which C&G agreed to find a surety that would issue a payment and performance bond to Calleo.  (Agreement for Consulting Services, Ex. 2 to Affidavit of Peter J. Murphy dated March 9, 2009 ("Murphy Aff.").)  When C&G billed Calleo for the bond premium, Calleo represented to Fernbach that it did not have the funds to pay that premium.  As a result, Fernbach paid the bond premium directly to C&G to expedite issuance of the bond to Calleo and thus the release of the construction loan to Fernbach.  In doing so, Fernbach's manager signed a letter stating that "Fernbach LLC hereby waives any claim that it is in privity with C&G and Fernbach does not and will not claim that it is a client of C&G."  (Pl.'s 56.1 ¶¶ 6-12; Defs.' 56.1 ¶¶ 6-12; Letter from Anita Younes, Manager, to Peter Murphy dated Feb. 27, 2007, Ex. 5 to Murphy Aff.)

---

[1] The Court considers both parties' corrected and updated statements of undisputed fact for purposes of these motions for summary judgment.  (Dkt. No. 51, 52.)

Shortly after Fernbach paid the premium to C&G, the State of Massachusetts dissolved C&G for allegedly unrelated reasons. (Pl.'s 56.1 ¶ 19; Defs.' 56.1 ¶ 19.)

Calleo subsequently failed to meet the surety's conditions for issuing the bond; as a result, the bond never issued. (Pl.'s 56.1 ¶ 22; Defs.' 56.1 ¶ 22.). On October 16, 2007, Fernbach terminated its contract with Calleo due to Calleo's continuing failure to furnish the performance and payment bond. That same day, Fernbach's counsel made a written demand that C&G return the funds paid to C&G by Fernbach. Fernbach made an additional demand the next week and then brought this litigation four months later. (Pl.'s 56.1 ¶¶ 14-18; Defs.' 56.1 ¶¶ 14-18.)

Fernbach's amended complaint states claims for unjust enrichment, money had and received, and fraud, alleging not only that C&G improperly retained Fernbach's payment, but also that C&G's sole principal, defendant Peter Murphy, committed fraud by intentionally hiding the fact that Massachusetts had dissolved C&G. (Am. Compl. ¶¶ 33, 55, 57, 64.) Fernbach brings its claims against both C&G and Murphy, alleging that Murphy controls the corporation and abused its corporate form to commit fraud. (*Id*. ¶¶ 53-57.) As noted above, the parties have submitted cross-motions for summary judgment.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d Cir. 2004). Nonetheless, the party

opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions. *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). The same standard applies where the parties file cross-motions for summary judgment—"each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001).

### III.     ANALYSIS

Fernbach brings claims for unjust enrichment, money had and received, and fraud pursuant to New York state law. Defendants contend that Fernbach fails to state a claim on which relief can be granted and assert the additional defense pursuant to Fed. R. Civ. P. 12(b)(7) that this Court should dismiss the complaint for failure to join an indispensable party, Calleo. Because the Court finds that, even drawing all inferences in its favor, Fernbach's claims fail as a matter of law, it grants summary judgment to defendants on all claims and thus need not reach the question of whether Fernbach failed to join an indispensable party.

#### A.     Unjust Enrichment

"The theory of unjust enrichment lies as a quasi-contract claim . . . [and] is an obligation imposed by equity to prevent injustice, in the absence of an actual agreement between the parties concerned." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 142, 907 N.E.2d 268; 879 N.Y.S.2d (2009). "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefited; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006) (quotation and citation omitted). However, "[t]he existence of a valid and enforceable written contract governing a particular subject matter

ordinarily precludes recovery [for unjust enrichment] for events arising out of the same subject matter." *U.S. E. Telecomms., Inc. v. U.S. W. Commc'ns Servs., Inc.*, 38 F.3d 1289, 1296 (2d Cir. 1994) (quoting *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388, 516 N.E.2d 190; 521 N.Y.S.2d 653 (1987)). "This is true whether the contract is one between parties to the lawsuit, or where one party to the lawsuit is not a party to the contract." *Granite Partners, L.P. v. Bear, Stearns & Co.*, 17 F. Supp. 2d 275, 311 (S.D.N.Y. 1998); *see also Jim Longo, Inc. v. Rutigliano*, 294 A.D.2d 541, 542, 742 N.Y.S.2d 877 (2d Dep't 2002). Even in the absence of a preclusive contract, "a plaintiff must demonstrate that services were performed for the defendant resulting in its unjust enrichment. It is not enough that the defendant received a benefit from the activities of the plaintiff; if services were performed at the behest of someone other than the defendant, the plaintiff must look to that person for recovery." *Kagan v. K-Tel Entm't*, 172 A.D.2d 375, 376, 568 N.Y.S.2d 756 (1st Dep't 1991) (citations omitted).

      1.    *Contract governing the same subject matter*

Defendants contend that because both Fernbach and C&G entered into contracts that governed the subject matter at issue in this action—the payment and performance bond—those contracts preclude Fernbach from bringing a quasi-contract claim for unjust enrichment. Courts construe this question of overlapping subject matter narrowly, however. *See Union Bank, N.A. v. CBS Corp.*, No. 08 Civ. 08362, 2009 WL 1675087, *6-8 (S.D.N.Y. June 10, 2009) (collecting cases). Here, only the contract between C&G and Calleo addresses the specific subject of payment to C&G that is at issue in this litigation. As several courts have noted, this area of the law is "not entirely settled." *Am. Med. Ass'n v. United Healthcare Corp.*, No. 00 Civ. 2800, 2007 WL 683974, at *10 (S.D.N.Y. Mar. 5, 2007) (collecting cases). The vast majority of decisions finding that a contract to which only one litigant is a party precludes a claim for unjust

5

enrichment address situations in which the plaintiff bringing the unjust enrichment claim is the party to the preclusive contract. *See, e.g. Vitale v. Steinberg*, 307 A.D.2d 107, 111, 764 N.Y.S.2d 236 (1st Dep't 2003); *Bellino Schwartz Padob Adver., Inc. v. Solaris Mktg. Group, Inc.*, 222 A.D.2d 313, 313, 635 N.Y.S.2d 587 (1st Dep't 1995) ("The existence of an express contract between [defendant] Solaris and plaintiff governing the subject matter of the plaintiff's claim also bars any quasi-contractual claims against defendant Titan, as a third party nonsignatory to the valid and enforceable contract between those parties." (citations omitted)).

At least one court in this district has found a pair of contracts linking both plaintiff and defendant to a common third party sufficient to preclude a claim for unjust enrichment, *see Serio v. Human Dynamics Corp.*, No. 04 Civ. 5146, 2008 WL 2600631, at *3 (S.D.N.Y. June 25, 2008), but another court recently reached a different conclusion when the defendant was the party to the purportedly preclusive contract, *see Marc Contracting, Inc. v. 39 Winfield Assocs., LLC*, 63 A.D.3d 693, 695, 880 N.Y.S.2d 346 (2d Dep't 2009) ("Although the defendant contends that its own operating agreement constitutes such a valid and enforceable contract, the plaintiff was not a party to this agreement, no reference was made in it to any services to be provided by the plaintiff . . . . Thus, the operating agreement did not create an enforceable legal obligation . . . [for] the plaintiff.").

The Court need not resolve this ambiguity, however, because defendants have demonstrated that summary judgment is warranted because Fernbach made its payment at the behest of Calleo.

2.   *Action taken at the behest of another*

To recover for unjust enrichment, "[i]t is not enough that the defendant received a benefit from the activities of the plaintiff; if services were performed at the behest of someone other than

6

the defendant, the plaintiff must look to that person for recovery." *Kagan*, 172 A.D.2d at 376 (citations omitted); *see also Michele Pommier Models, Inc. v. Men Women NY Model Mgmt., Inc.*, 14 F. Supp. 2d 331, 338 (S.D.N.Y. 1998). Addressing analogous facts, a New York state court found that a plaintiff could not recover a payment that it made to a defendant at the instruction of the plaintiff's accountant, even when the accountant told the plaintiff that it would recover the payment in a matter of days and gain a substantial tax benefit. *Fountoukis v. Geringer*, 33 A.D.3d 756, 757, 822 N.Y.S.2d 644 (2d Dep't 2006) ("[T]he plaintiff must look for recovery to [the accountant], and not [defendant], since the $200,000 money transfer was performed at the behest of [the accountant]."); *see also Seneca Pipe & Paving Co. v. S. Seneca Cent. Sch. Dist.*, 63 A.D.3d 1556, 1557, 880 N.Y.S.2d 807 (4th Dep't 2009) (plaintiff contractor could not recover funds paid by client school district to defendant contractor for work performed by plaintiff when the service was performed at the behest of the school district); *Serio*, 2008 WL 2600631, at *4 n.4 (plaintiff insurer could not obtain unpaid premiums from defendant when an intermediary procured the insurance for the defendant).[2] In sum, a claim for unjust enrichment does not lie to relieve a party "of the consequences of [the party's] own failure to . . . exercise caution with respect to a business transaction." *Dragon Inv. Co. II v. Shanahan*, 49 A.D.3d 403, 405, 854 N.Y.S.2d 115 (1st Dep't 2008). Here, defendants received a benefit from plaintiff in the form of Fernbach paying C&G the contract price for the payment and performance bond, but Fernbach made that payment at the behest of Calleo, whose contract required Calleo to obtain the bond. Accordingly, Fernbach must look to Calleo for relief.

---

[2] In *Serio*, Judge Berman also characterized a similar relationship in which an intermediary was obligated by its contract with one party to obtain a service from another party as one in which only the intermediary "received a benefit from the activities of the plaintiff" as set forth in *Kagan*, thus precluding the plaintiff's claim for unjust enrichment. 2008 WL 2600631, at *4 (quoting *Kagan*, 172 A.D.2d at 376).

7

B.  Money Had and Received

An action for money had and received is a contract implied in law.  "[I]t is an obligation which the law creates in the absence of agreement when one party possesses money that in equity and good conscience he ought not to retain and that belongs to another."  *Parsa v. State*, 64 N.Y.2d 143, 148, 474 N.E.2d 235; 485 N.Y.S.2d 27 (1984).  To prevail on such a claim, a plaintiff must demonstrate that "(1) the defendant received money belonging to the plaintiff, (2) the defendant benefited from receipt of the money, and (3) under principles of equity and good conscience, the defendant should not be permitted to keep the money."  *State v. Int'l Asset Recovery Corp.*, 56 A.D.3d 849, 852, 866 N.Y.S.2d 823 (3d Dep't 2008) (quotation and citation omitted); *see also Aaron Ferer & Sons, Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 125 (2d Cir. 1984).  "Traditionally, the remedy for money had and received is available 'if one man has obtained money from another, through the medium of oppression, imposition, extortion, or deceit, or by the commission of a trespass.'"  *Panix Promotions, Ltd. v. Lewis*, No. 01 Civ. 2709, 2002 WL 122302, at *2 (S.D.N.Y. Jan. 22, 2002) (quoting *Miller v. Schloss*, 218 N.Y. 400, 408 (1916)).  Such an action has succeeded "where plaintiff has paid money by mistake, money has been collected for an illegal tax or assessment, or property is erroneously taken or withheld by a public official."  *Parsa*, 64 N.Y.2d at 148 (citing examples of actions for money had and received).

Specifically, courts have found that plaintiffs lack the requisite possessory interest in money freely given to a defendant with the expectation of performance.  *Panix Promotions*, 2002 WL 122302, at *2; *Nat'l Westminster Bank PLC v. Grant Prideco, Inc.*, 261 F. Supp. 2d 265, 275 n.69 (S.D.N.Y. 2003).

Fernbach does not dispute that it paid C&G freely and willingly on Calleo's behalf. Instead, it contends that C&G engaged in deceit by inducing Fernbach to pay for the bond when C&G had no intent to procure that bond. (Am. Compl. ¶ 57.) However, Fernbach offers no evidence to support its allegation that C&G had no intent to procure the bond. Indeed, both parties proffer substantial correspondence between C&G, Calleo, and Fernbach that demonstrates C&G's efforts both to procure a suitable surety and to ensure that Calleo met the requirements for releasing the bond. (*See* Ex. 6-9 to Murphy Aff.; Ex. G, L to Declaration of Anita Younes dated Feb. 23, 2009 ("Younes Dec.").)

In fact, C&G did find a surety willing to issue Calleo the bond it needed, but Calleo failed to meet the conditions required to release it.[3] (Murphy Aff. ¶¶ 11-17; Letter from Karlie Fleshler, The Surety Group, Inc., to Peter Murphy, copied to Gino Calleo dated Sept. 25, 2007, Ex. 3 to Murphy Aff.) To survive defendants' motion for summary judgment, Fernbach "must proffer admissible evidence that sets forth specific facts showing a genuinely disputed factual issue that is material under the applicable legal principles. A party opposing summary judgment does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory, or based on speculation." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 310 (2d Cir. 2008) (quotations and citations omitted). Fernbach's bald

---

[3] Fernbach paid C&G $106,035.78 on behalf of Calleo, or 2.5 percent of the total bond value of $4,241,435. (Pl.'s 56.1 ¶¶ 6-11; Defs.' 56.1 ¶¶ 6-11.) The contract between Calleo and C&G specified a nonrefundable fee of 1 percent of the bond value "for the time and expenses involved in appraising the feasibility of Client's bonding requirements," which was due even if "the bond is not issued due to refusal or failure on the part of the Client to go forward after Client has been offered a commitment from a Surety." (Agreement for Consulting Services, Ex. 2 to Murphy Aff.) If the surety did issue the bond, then Calleo agreed to pay a total bond premium—inclusive of the 1 percent fee—of 2.5 percent of the amount bonded. (*Id.*) C&G characterizes Fernbach's payment to it as consistent with a nonrefundable fee, while Fernbach contends that it paid the full bond premium, and yet no bond issued. Whether or not the money that Fernbach paid C&G would have been refundable if paid by Calleo pursuant to its contract with C&G is immaterial to the Court's analysis of these facts, however, as it does not change the fact that Fernbach presents no evidence of oppression, imposition, extortion, or deceit as required to succeed on a claim for money had and received. *See Panix Promotions*, 2002 WL 122302, at *2.

allegations of deceit are insufficient. Accordingly, the Court finds that Fernbach's claim for money had and received fails as a matter of law.

    C.    <u>Fraud</u>

To succeed on a claim for common law fraud, Fernbach must prove: "(1) a misrepresentation or a material omission of material fact which was false and known by defendant to be false, (2) made for the purpose of inducing the plaintiff to rely on it, and (3) justifiably relied upon by the plaintiff, (4) who then suffered an injury as a result of such reliance." *City of New York v. Smokes-Spirits.Com, Inc.*, 541 F.3d 425, 454 (2d Cir. 2008).

Fernbach alleges that Murphy made false representations and that C&G issued invoices and accepted payment for bond premiums when it did not intend to procure the bond. (Am. Compl. ¶¶ 57-63.) Fernbach also contends that Murphy intentionally hid the State of Massachusetts' dissolution of C&G from Fernbach to hide the fact that Murphy personally pocketed the payments. As set forth above, Fernbach has proffered no evidence that defendants misrepresented any facts related to the payment and performance bond or that they engaged in fraud or deceit to induce Fernbach to pay the bond premium. To the contrary, both parties have documented C&G's efforts to assist and encourage Calleo to obtain the bond. Fernbach offers no evidence that the invoices were either fraudulent or directed at Fernbach.

Fernbach similarly fails to proffer evidence that Murphy committed fraud in failing to inform it that the State of Massachusetts had dissolved C&G. Plaintiff's counsel delivered payment for the bond to C&G with cover letters dated April 30 and May 22, 2007 and the dissolution did not occur until May 31, 2007. (Pl.'s 56.1 ¶¶ 19, 10-11; Defs.' 56.1 ¶¶ 19, 10-11.) Accordingly, there was no dissolution to misrepresent at the time Fernbach made its payments. As set forth above, C&G had no obligation to return Fernbach's payment, and so any silence or

misrepresentation of its corporate status subsequent to those payments was not material or made to induce Fernbach's reliance. *See Smokes-Spirits.Com*, 541 F.3d at 454.

Because the Court grants defendants' motion for summary judgment on Fernbach's claims for unjust enrichment, money had and received, and fraud, it need not address either Ferbach's argument that the Court should pierce the corporate veil and hold Murphy liable for C&G's actions or defendants' argument that Fernbach's complaint should be dismissed for failure to join an indispensable party.

## IV.   CONCLUSION

Because Fernbach paid for Calleo's payment and performance bond at Calleo's behest, it did so voluntarily without deceit by defendants, and it has proffered no evidence to support a finding of fraud, the Court denies Fernbach's motion for summary judgment and grants defendants' motion for summary judgment. The Clerk of Court is directed to enter judgment for defendants.

Dated: New York, New York
       August 12, 2009

SO ORDERED:

_____
Sidney H. Stein, U.S.D.J.